**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CIVIL NO.  1:08CV318**

| | |
|---|---|
| **SOUTHERN ALLIANCE FOR CLEAN ENERGY; ENVIRONMENTAL DEFENSE FUND; NATIONAL PARKS CONSERVATION ASSOCIATION; NATURAL RESOURCES DEFENSE COUNCIL; and SIERRA CLUB,** ) ) ) ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| **Vs.** ) ) | **ORDER OF DISMISSAL** |
| **DUKE ENERGY CAROLINAS, LLC,** ) ) | |
| **Defendant.** ) ) | |

     **THIS MATTER** is before the Court on Defendant's motion for summary judgment filed May 1, 2009, and Plaintiffs' motion to enforce Judgment, filed May 18, 2009.  A hearing on these motions was held before the undersigned on June 3, 2009.  At that time, the captioned parties along with the North Carolina Department of Air Quality (DAQ), appearing as *amicus curiae* by Court invitation, were heard.  Responses to the respective motions filed by the parties herein along with the *amicus* brief were also considered.

# I.  STATEMENT OF FACTS

On July 16, 2008, the Plaintiffs filed their complaint alleging

Defendant was in violation of § 112(g) of the Clean Air Act (CAA) by the

ongoing construction of Cliffside Unit 6 in the absence of a final

determination of compliance with the Maximum Achievable Control

Technology (MACT) requirements.  ***See* 42 U.S.C. § 7412(g)(2)(B); *see***

***also*, 15A N.C. Admin. Code 02Q.0528(b).**  The complaint further alleged

that the plant as designed would be a major source of hazardous air

pollutants (HAPs) and pose a serious threat to the people and environment

in surrounding areas of North Carolina.  Notices of violation were sent to

the required parties.  Although notice of violation was sent to the North

Carolina Department of Environment and Natural Resources (DENR),

neither that department nor DAQ were named as defendants to this

lawsuit.  In accordance with the provisions of N.C. Gen. Stat. § 143-

215.108, Defendant was granted permit T28 to begin construction of

Cliffside Unit 6.  At the time Defendant began construction of the Unit 6

project, the Environmental Protection Agency (EPA) sought to remove

coal-fired power plants from requirements of the CAA; by the time Plaintiffs

filed this complaint, the EPA action had been nullified.  ***New Jersey v.***

***EPA*, 517 F.3d 574, 578, 582 (D.C. Cir. 2008),** *cert. denied*, **129 S. Ct.
1308 (2009).**  As a result, CAA compliance was required for a valid permit.

On August 11, 2008, Defendant filed its motion to dismiss this action
primarily on the grounds that it had commenced construction before the
*New Jersey* decision was issued.  On December 2, 2008, this motion was
denied and Judgment in favor of the Plaintiffs was entered by this Court.
*See* **Memorandum and Order and Judgment, filed December 2, 2008.**

The December 2 Judgment determined that the Defendant qualified
as a potential "major source" of HAPs and was subject to regulation under
§ 112.  The Judgment noted the following:

> The [DAQ] of the North Carolina [DENR] has the authority and
> duty to enforce the requirement of a full MACT proceeding and
> to modify its previously issued construction permit if the
> proceeding indicates such is necessary to comply with the
> requirements of current law.
>
> The Defendant shall, within a period not to exceed 10 days
> from entry of this Judgment, proceed to initiate and participate
> in a case-by-case type MACT public process proceeding before
> the [DAQ] of the North Carolina [DENR] which is consistent
> with DAQ and § 112 standards.  The process shall be
> completed within a timeline of 60 days from the date of entry of
> this Judgment.

**Judgment, ¶¶ 4-5.**

The Defendant began compliance within a period of two days after this Judgment was entered and DAQ began a pattern of full cooperation by renewing the previously issued permit and holding two publicly announced hearings. The hearings were well attended by supporters of both Plaintiffs and Defendant. Mail responses were also invited, received and considered.

On December 17, 2008, Defendant appealed this Court's Judgment to the Fourth Circuit Court of Appeals, but subsequently sought and received a stay from that Court pending the outcome of ongoing efforts to reach agreement between the parties as to a proper resolution of the case.

As proceedings continued in the case, this Court entered an order extending an invitation to the Office of the North Carolina Attorney General to file an *amicus* brief herein addressing the following issue:

> With reference to the letter from Plaintiffs to this Court filed on January 7, 2009, is the North Carolina [DENR] [DAQ] in full compliance with the Judgment, Memorandum, and Order filed by the Court on December [2], 2008, and if so, why or why not?

**Order, filed January 9, 2009.** Also on January 9, 2009, DAQ filed a full report of numerous activities undertaken by that department in an effort to fully comply with the Court's Memorandum and Judgment of December 2, 2008. *See* **Notice by DAQ, filed January 9, 2009.** On January 20, 2009,

North Carolina's Attorney General filed his responsive brief concluding that DAQ had fully complied with the Court's Judgment. ***Amicus Curiae* Brief of the North Carolina Division of Air Quality, filed January 20, 2009.**

On March 16, 2009, DAQ filed an *amicus* status report indicating that it had completed the proceedings contemplated by the Court and determined Unit 6 to be a minor source of HAPs. **Report of *Amicus Curiae* The North Carolina Division of Air Quality, filed March 16, 2009, at 4.** The status report showed that on March 13, 2009, DAQ issued the revised Duke Cliffside Permit T29. ***See* Exhibit A*, attached to id.*** It further noted that the decision would be appealable to the North Carolina Office of Administrative Hearings (OAH) within a period of 30 days as required by N.C. Gen. Stat. § 143-215.108(e) and § 150B-23(f). *Id*. **at 6-7.** Subsequent to the determination by the OAH administrative law judge, the North Carolina Environmental Management Commission (EMC) would issue its final permitting decision. *Id*. **at 7.** DAQ also advised that there were four cases presently pending with the OAH regarding the Duke permit for construction of the Cliffside Unit 6. *Id*. **at 7, n.2.**

Following the DAQ's issuance of permit T29, all the named Plaintiffs in this action, with the exception of the Plaintiff Natural Resources Defense Council, filed a Petition for a Contested Case Hearing with the OAH on May 12, 2009.  ***See* Exhibit A, *attached to* Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment, filed May 28, 2009.**  In the petition, those parties seek essentially the same relief being sought in this action.  They also reference the four cases noted above as related cases challenging DAQ's issuance of Air Quality permit T28 for construction and operation of Cliffside Unit 6.  ***Id*. ("II.  Statement of Related Cases").**  In the attachment to the hearing request form, Plaintiffs state that "[a]ccording to DAQ, Permit T29 is a 'complete permit that supersedes T28 in its entirety.'" ***Id*. at 2, Attachment to Form H-06.** Plaintiffs also quote from the Court's ruling that "'Cliffside Unit 6 is an EGU [electrical generating unit] under construction which has the potential to emit in excess of ten tons per year of an individual HAP (hydrochloric acid) and over 25 tons of a combination of other HAPs.  As such, it is subject to the requirements of § 112 of the CAA.'" ***Id*. at 4 (quoting Memorandum and Order, *supra*, at 21-22).**

In sum, four of the five Plaintiffs here are also Petitioners in an action pending in the North Carolina's OAH before the Hon. J. Randall May, Administrative Law Judge. In addition to the similarity of issues, the relief sought is identical, *i.e.*, compliance by Duke Energy with Section 112(g) of the Clean Air Act. **42 U.S.C. § 7412(g)(2)(B); 15A N.C. Admin. Code 02D.1112.** As a result, two separate and independent courts are now being asked to decide the same issue. This is obviously an unwise use of scarce judicial resources. Left undisturbed, after final disposition at the trial level, two separate paths of appeal could be followed. Such a scenario is unacceptable.

In the event the Administrative Law Judge rules against Petitioners in the state proceeding, they may note their exceptions which are reviewed as a matter of course by the North Carolina EMC. If affirmed by the EMC, further judicial review is had in a North Carolina superior court. *See* **N.C. Gen. Stat. §§ 150B-36, 150B-43 ("Nothing in this chapter shall prevent any person from invoking any judicial remedy available to him under the law to test the validity of any administrative action not made reviewable under this Article.");** *see also*, **N.C. Gen. Stat. § 150B-51 (discussion of the scope and standard of review in the North**

**Carolina courts and related cases)**. In short, not only may the parties receive a full hearing before an administrative law judge, the aggrieved party has access to a system of appropriate appellate judicial review.

## II. DISCUSSION

Defendant contends that this Court lacks jurisdiction to proceed further in finally determining the rights of the parties in this action citing *Nat'l Parks Conservation Ass'n v. TVA*, 175 F. Supp. 2d 1071, 1079 (E.D. Tenn. 2001), and *United States v. Solar Turbines, Inc.*, 732 F. Supp. 535, 539 (M.D. Pa. 1989). **Defendant's Reply in Support of its Motion for Summary Judgment, filed May 28, 2009, at 10.** However, the Court does not choose to address this argument specifically, but is more persuaded by those cases relying on the logic and fairness of comity, federalism, and abstention. *See Burford v. Sun Oil Co.*, **319 U.S. 315 (1943);** *Younger v. Harris*, **401 U.S. 37 (1971).** Both of these Supreme Court cases address the complex issues surrounding abstention. *See Cohens v. State of Virginia*, **19 U.S. 264, 404 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." (Marshall, C.J.)).** The problem is

deciding the difference.  ***Constr. Aggregates Corp. v. Rivera de***

***Vicenty*, 573 F.2d 86 (1ˢᵗ Cir. 1978).**

In *Younger*, the Supreme Court referenced

the notion of "comity," that is, a proper respect for state
functions, a recognition of the fact that the entire country is
made up of a Union of separate state governments, and a
continuance of the belief that the National Government will
fare best if the States and their institutions are left free to
perform their separate functions in their separate ways.  This .
. . is referred to by many as "Our Federalism[.]"

***Younger*, 401 U.S. at 44-45.**  Though *Younger* dealt with federal

interference with state criminal proceedings, it is now "carried . . .

increasingly [into] civil litigation."  **17B Wright, Miller, Cooper & Amar,**

***Federal Practice & Procedure*, § 4254 at 73 (3d ed. 1998); *see also,***

***Duty Free Shop, Inc. v. Administracion De Terrenos De*, 889 F.2d**

**1181, 1182 (1ˢᵗ Cir. 1989) ("In later cases, the [Supreme] Court has**

**held that the *Younger* doctrine is 'fully applicable to noncriminal**

**judicial proceedings when important state interests are involved.'"**

**(quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*,**

**457 U.S. 423, 432 (1982)); *Crazy Eddie, Inc. v. Cotter*, 666 F. Supp.**

**503, 513 (S.D.N.Y. 1987) (involving state enforcement of energy**

**regulations).**

In *Burford*, the issue involved the granting of a permit to drill oil wells issued by the Texas Railroad Commission, a state regulatory authority. The state commission ruling was subject to appellate judicial review. The Supreme Court concluded that interference by the federal court in what was primarily a state matter would likely result in "[d]elay, misunderstanding of local law, and needless federal conflict with the State policy[.]" ***Burford*, 319 U.S. at 327.** This appears to be particularly true where the challenge is to a permit issued by the state permitting agency. ***Palumbo v. Waste Tech. Indus*., 989 F.2d 156, 159 (4th Cir. 1993).**

In the case of *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,* 491 U.S. 350 (1989), the Supreme Court held the *Burford* doctrine was improperly applied by the district court, but observed:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies . . . where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

***Id*. at 361 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)).** In this case, as noted above, virtually

the same parties are contesting the issuance of Unit 6 permit T29 by DAQ before the North Carolina OAH.

Recently, the Fourth Circuit has revisited the *Burford* abstention doctrine. ***See MLC Auto., LLC v. Town of Southern Pines*, 532 F.3d 269 (4th Cir. 2008).** "There is no 'formulaic test' for *Burford* abstention, and, '[a]lthough [the] doctrine has many different forks and prongs, [abstention's] central idea has always been one of simple comity[.]'" ***Id*. at 280 (quoting *Johnson v. Collins Entm't Co.*, 199 F.3d 710, 718-19 (4th Cir. 1999)).**

> Thus, the Supreme Court has admonished the federal courts to respect the efforts of state governments to ensure uniform treatment of essentially local problems. As we have explained, although abstention from the exercise of federal jurisdiction is the exception, not the rule, its importance in our system of dual sovereignty cannot be underestimated. [The Court] must "exercise [its] discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy."

***Id*. (quoting *Burford*, 319 U.S. at 318; other internal quotation marks and citations omitted).**

As noted in the Court's review of the facts and prior proceedings in this case, the facts now differ substantially from the case beginnings.

Through their complaint, Plaintiffs sought declaratory and injunctive relief, civil penalties, attorney fees and costs against Duke for construction of the Unit 6 plant for the reason that "Duke's ongoing construction of Cliffside Unit 6 violates Section 112(g) of the Act, 42 U.S.C. § 7412(g), which prohibits construction of such a plant in the absence of a final and effective determination that the facility will achieve a level of hazardous air pollutant emissions control that satisfies" MACT requirements.

**Complaint, ¶¶ 1-2.** Thus, at that time, the legality of the T28 initial permit was at issue and no MACT proceedings had been held. In the Judgment, this Court found that Plaintiffs had standing to bring the action challenging the legality of Defendant's failure and refusal to participate in a formal MACT proceeding. The Court then found that Plaintiffs prevailed on the issue of the illegality of Duke's construction of Cliffside Unit 6 without having participated in a formal MACT proceeding. Accordingly, the Court ordered Defendant to "proceed to initiate and participate in a case-by-case type MACT public process proceeding before the Division of Air Quality of the North Carolina Department of Environmental and Natural Resources which is consistent with DAQ and § 112 standards." **Judgment, at 2.** Although not a named party to the litigation, DAQ proceeded immediately

to begin a full review of the permit, and as previously noted, held public hearings affording parties, experts, and the public an opportunity to be heard. Thereafter, DAQ issued the T29 final permit. As previously noted, following issuance of this permit, four of the Plaintiffs herein filed a petition before the OAH naming DAQ and DENR as respondents therein challenging the issuance of permit T29. The issues raised and relief sought are either identical or essentially the same to those herein and now involve the proper state forum for resolving CAA disputes and other environmental concerns.

The State of North Carolina has a strong and major interest in the health and well being of its citizens and in the orderly conduct of proceedings to protect them. Obviously, the issue of clean air is one of major public importance and is the primary responsibility of state and local governments. **_Sugarloaf Citizens Ass'n v. Montgomery County, Md.,_** **_33 F.3d 52 (table), 1994 WL 447442 (4th Cir. 1994)._** Moreover, in enacting the CAA, Congress found:

> [T]hat air pollution prevention (that is, the reduction or elimination, through any measures, of the amount of pollutants produced or created at the source) and air pollution control at its source is the primary responsibility of States and local governments[.]

**42 U.S.C.A. § 7401(a)(3).**  The Court finds that the State's administrative process is an adequate avenue to address the nature of the T29 permit at issue.  Under the North Carolina regulatory framework, the Plaintiffs/petitioners may proceed in an orderly process of review to and including the North Carolina Supreme Court.  Unnecessary federal intervention should not "disrupt the orderly administration of state regulatory schemes."  ***Bergeron v. Estate of Loeb*, 777 F.2d 792, 800 (1ˢᵗ Cir. 1985).**

The Court is aware that "abstention [from the exercise of federal jurisdiction] is the exception, not the rule."  ***Pomponio v. Fauquier County Bd. of Sup'rs*, 21 F.3d 1319, 1324 (4ᵗʰ Cir. 1994).**  Nevertheless, the Court, in its discretion, may abstain in appropriate cases.  ***Employers Res. Mgmt. Co., Inc. v. Shannon*, 65 F.3d 1126 (4ᵗʰ Cir. 1995); *Natural Res. Def. Council v. BP Products N. America*, 2009 WL 1854527, 2009 U.S. Dist. LEXIS 54363 (N.D. Ind. June 26, 2009).**  Therefore, for the reasons previously discussed, the Court, in the exercise of its discretion, will abstain from further involvement in the case and the review of the T29 permit will be carried out through the specialized State administrative review process.

The Court acknowledges that the proceedings may be prolonged by this ruling. However, the parties are also aware that in the final analysis, state or federal enforcement will dictate that Unit 6 from "day one" must be operated in strict compliance with § 112(g) of the CAA and the identical requirements of North Carolina law. This, therefore, would allow any aggrieved plaintiff to file a challenge in federal court to the final permit issued by the State after the administrative review process has been completed.

### III. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion for summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that the Defendant's motion to amend the Court's pretrial order is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that the Plaintiffs' motion to enforce Judgment is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' motion for leave to file a surreply to Defendant's motion for summary judgment is **ALLOWED**, and

the surreply attached to the motion is hereby deemed filed and a part of the proceedings herein.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for leave to file supplemental authority is **ALLOWED**, and the attachment to such motion is deemed filed and a part of the proceedings herein.

**IT IS FURTHER ORDERED** that, for the reasons stated herein, the Court in its discretion, abstains from further involvement in this case, and this action is hereby **DISMISSED WITHOUT PREJUDICE.**

Signed: July 2, 2009

Lacy H. Thornburg
United States District Judge