IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

No. 1:08-cv-00318-LHT

| | |
|---|---|
| SOUTHERN ALLIANCE FOR CLEAN ENERGY, ENVIRONMENTAL DEFENSE FUND, NATIONAL PARKS CONSERVATION ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL, and SIERRA CLUB, | ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| DUKE ENERGY CAROLINAS, LLC, | ) ) ) |
| Defendant. | ) |

# **EXHIBIT 2**

# **DECLARATION OF JOHN T. SUTTLES, JR.**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

No. 1:08-cv-00318-LHT

| | |
|---|---|
| SOUTHERN ALLIANCE FOR CLEAN ENERGY, ENVIRONMENTAL DEFENSE FUND, NATIONAL PARKS CONSERVATION ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL, and SIERRA CLUB,<br><br>Plaintiffs,<br><br>v.<br><br>DUKE ENERGY CAROLINAS, LLC,<br><br>Defendant. | **DECLARATION OF<br>JOHN T. SUTTLES, JR.** |

I, John T. Suttles, Jr., Esq., declare as follows:

1. I am a senior attorney at the Southern Environmental Law Center ("SELC"). Along with colleagues at the Natural Resources Defense Council ("NRDC"), SELC is counsel to Plaintiffs in this case. I submit this declaration in support of Plaintiffs' motion to recover reasonable attorneys' fees and expenses.

2. From its inception, I have served as a lead lawyer for Plaintiffs in this action. I am fully familiar with all prior proceedings. The principal purposes of this declaration are to describe the qualifications and roles of the attorneys for whose efforts Plaintiffs seek to recover fees; the nature and extent of the work they performed; the fee award Plaintiffs seek, including the billing judgment we have exercised and the hourly rates we ask the Court to apply; and the out-of-pocket expenses Plaintiffs incurred for which they seek recovery.

## Attorney Qualifications and Roles

### Attorney Qualifications

3. Plaintiffs are five environmental organizations concerned about the human health and environmental effects of hazardous air pollutant ("HAP") emissions from Cliffside Unit 6. They have been jointly represented throughout the case by SELC and NRDC.

4. Both SELC (in the southeastern United States) and NRDC (throughout the United States) have a long record of conducting litigation to vindicate citizen rights embedded in federal environmental laws, including the Clean Air Act. Each has a staff of experienced litigating attorneys.

5. While a total of nine lawyers from SELC and NRDC worked on the case, Plaintiffs seek to recover fees for the time and effort expended by only four of them: Mitchell Bernard, Ben Longstreth, Aaron Bloom, and me.

6. I am a graduate of the University of Virginia, and hold J.D. (1988) and LL.M. (2002) degrees from Tulane University. I have been a senior attorney in SELC's Chapel Hill office since 2006; before that I was a SELC staff attorney (2005-06), Deputy Director of the Tulane Environmental Law Clinic (2002-05), and a lawyer in private practice for 14 years.

7. Mitchell Bernard is Litigation Director of NRDC. He earned his undergraduate degree from Princeton University and his law degree from New York University School of Law (1979). He clerked in the U.S. Court of Appeals for the Second Circuit. Mr. Bernard has litigated federal environmental cases for 29 years. From 1995-98, he served as a monitor appointed by Judge John S. Martin, Jr. (Southern District of New York) to oversee compliance with the terms of a sentence of probation the court imposed on Con Edison, New York City's utility company. Con Edison had committed environmental crimes.

3

8. Benjamin Longstreth is an attorney in NRDC's Washington, D.C. office. He is a graduate of Williams College and Columbia University Law School (2002). He clerked in the U.S. Court of Appeals for the Second Circuit. Mr. Longstreth spent three years in the Honors Program at the U.S. Department of Justice (Environment and Natural Resources Division) before joining NRDC in 2006.

9. Aaron Bloom is an attorney in NRDC's New York office. He is a graduate of Columbia College and Harvard Law School (2003). Mr. Bloom clerked in the U.S. District Court for the Eastern District of New York. After three years in the litigation department of Debevoise & Plimpton LLP in New York, he joined NRDC.

10. Copies of the resumes of each of the four lawyers described briefly above are appended as Exhibit 3 to Plaintiffs' brief.

Attorney Roles

11. Litigating this case has been a thoroughly collaborative enterprise between SELC and NRDC. We have conferred and worked closely together on every aspect of the case, from pre-complaint research through this fee application. SELC has intimate knowledge of Cliffside Unit 6 and the administrative process that preceded the filing of this citizen suit. NRDC has

4

a wealth of experience litigating citizen suits (under the Clean Air Act and other statutes) in federal courts throughout the country and possesses unique in-house experience in Clean Air Act enforcement. I believe the two organizations' lawyers worked in a complementary, effective, economical fashion, with a minimum of redundancy or wasted effort.

12. As the senior members of the team, Mr. Bernard and I provided overall guidance on strategic and tactical litigation issues. We did not play merely executive roles. Each of us participated actively in drafting and editing papers, and in deliberating on and making decisions. In addition, I appeared before the Court during oral argument, communicated and conferred with many of the Plaintiff organizations, interacted with Plaintiffs' expert Dr. Ron Sahu, and conducted relevant legal research.

13. Mr. Longstreth argued orally in Asheville during Court conferences or hearings. He worked with Dr. Sahu, conducted legal research, drafted and edited papers, and engaged in settlement discussions. He played an integral role in each phase of the litigation.

14. So did Mr. Bloom. He did a great deal of legal research, drafted and edited memoranda and briefs, and was actively engaged in every aspect of motion practice and discovery.

5

## Nature and Extent of Work Performed

15. Litigating this case from Plaintiffs' side has been labor-intensive. We conducted pre-complaint research on the viability of a citizen suit to address what we saw as Duke's failure to comply with section 112 of the Clean Air Act; engaged in discussions with various groups that became Plaintiffs; prepared and served the requisite 60-day notice letter; researched the law relating to retroactive application of the D.C. Circuit's decision in *New Jersey v. EPA*; reviewed the history of administrative proceedings culminating in the January 2008 permit to construct Unit 6; considered the impact of the permit on the viability of a federal citizen suit; drafted and filed the complaint; briefed and argued the summary judgment issues relating to standing and the application of section 112; worked with Dr. Sahu to present technical information that we thought would be helpful to the Court; resisted Duke's motion to dismiss the complaint; reviewed and responded to the materials Duke submitted in October 2008 concerning the purported minor source status of Unit 6; reviewed the Court's December 2, 2008 decision granting summary judgment to Plaintiffs; engaged in discovery; discussed settlement with Duke; participated actively in the Court-ordered CAA § 112 process (preparing detailed comments, attending public hearings, reviewing

6

the North Carolina Division of Air Quality ("DAQ") Hearing Officer's Report, exploring the legal and technical aspects of Duke's sudden minor source claim); attended and argued at a status conference in January 2009 regarding the Court-ordered process; reviewed the revised permit DAQ issued in mid-March 2009; resisted Duke's motion for summary judgment after the revised permit was issued; researched and prepared Plaintiffs' cross-motion to enforce the judgment; addressed Duke's appeal from the Court's December 2008 Judgment; and prepared this motion for attorneys' fees and expenses.

16. The case has been demanding. Duke is an unyielding adversary. The State of North Carolina, while not a party, filed briefs supporting Duke's legal positions. There were a number of legal and technical issues that required mastery in order to present them straightforwardly to the Court. We felt responsible to participate actively in the post-December 2008 permit process in order to continue to protect Plaintiffs' rights and to ensure compliance with the Court's Judgment.

17. In my view, all this hard work was necessary in order to produce the excellent results Plaintiffs have achieved.

7

### Plaintiffs' Fee Calculation

18. We have calculated fees by (1) totaling the number of hours recorded by each lawyer who worked on the case for Plaintiffs, (2) exercising billing judgment to reduce the number of recorded hours, (3) multiplying for each lawyer for whose effort we seek to recover fees the number of remaining hours by a reasonable hourly rate to derive a lodestar fee amount, and then (4) reducing the lodestar by a percentage in a further exercise of billing judgment. I explain this below.

### Recorded Hours

19. Plaintiffs have displayed their lawyers' contemporaneous time records in tables that indicate, by lawyer, the date work on the case was performed, a brief description of the work activity, and the number of hours consumed by the work. These time records are appended as Exhibit 4 to Plaintiffs' brief. Mr. Bernard, Mr. Longstreth, and Mr. Bloom have submitted declarations authenticating their contemporaneous time sheets; they are appended as Exhibit 5 to Plaintiffs' brief. I attest that my time records submitted to the Court were kept contemporaneously and accurately reflect the time I spent working on the case.

8

20. For the Court's reference, and as displayed in Exhibit 4, we have divided the work effort, which extends in time from April 2008 through July 2009, into eight distinct categories: (1) pre-December 2, 2008 (the date of the Court's summary judgment ruling in Plaintiffs' favor); (2) Court-ordered § 112 process (covering approximately though not exclusively the period from December 2, 2008 through the granting of the revised permit on March 13, 2009); (3) discovery; (4) Duke's summary judgment motion and Plaintiffs' cross-motion to enforce the Judgment (which begins with the granting of the March 13, 2009 permit, except for anticipatory research and drafting Plaintiffs' counsel performed earlier on); (5) settlement; (6) appeal; (7) fee petition; and (8) hours for which Plaintiffs do not seek compensation (which captures time for assorted litigation-related tasks). The category in which particular attorney hours were recorded is noted in the right-hand column in Exhibit 4.

Specific Hour Reductions

21. Plaintiffs are not seeking to recover fees for all the hours their lawyers recorded on the case. We take seriously the word "reasonable" in the Clean Air Act's fee-shifting provision. Accordingly, we have reduced substantially the number of recorded hours.

9

22. First, we are not seeking to recover fees for any time expended by five SELC and NRDC lawyers who spent substantial time on the case. A great deal of that time was useful. For example, Patrice Simms, an NRDC lawyer who spent many years in the Office of General Counsel at EPA, is one of the country's leading experts on the intricacies of the Clean Air Act, including section 112. His 90 hours of advice generated economies for Plaintiffs' lawyers, saving us from untold hours of research. Nancy Marks is an experienced citizen suit enforcement attorney at NRDC who contributed valuable counsel. And three SELC attorneys (Blan Holman, Gudrun Thompson, and Jill Tauber) spent many hours doing research, drafting and editing papers, assisting in preparations for oral argument, and performing other helpful tasks. (Ms. Tauber is admitted to practice in New York and Washington, D.C., but not in North Carolina.) In all, these five lawyers expended more than 700 hours assisting in the litigation. Based on my familiarity with the time these lawyers expended, as well as their substantive contributions to the overall effort, I believe they were hours well-spent in Plaintiffs' behalf. However, because we believe it is reasonable and appropriate to limit the number of attorneys for whose work we seek to recover fees, we are not seeking fee recovery for any of that time.

23. Second, Plaintiffs do not seek to recover fees for any of the many hours various SELC and NRDC law student interns expended doing useful legal research.

24. Third, Plaintiffs are cutting in half all hours attributable to travel. These reductions are displayed on Exhibit 6.

25. Fourth, Plaintiffs are reducing the number of hours for which they seek fee recovery in the Duke Summary Judgment/Motion to Enforce category (number 4 in the right-hand column of Exhibit 4). We are doing so because, while Plaintiffs prevailed on Duke's motion (which the Court denied, leaving open the state administrative/judicial route for Plaintiffs to challenge Unit 6's minor source status), and the underlying work involved in the cross motions overlapped to a great degree, in its July 2, 2009 Order the Court decided to abstain from adjudicating the merits of Plaintiffs' motion to enforce. While this was not a defeat for Plaintiffs, it was not a victory either, and we think some reduction in hours that can be attributed to that motion alone is appropriate. In an exercise of billing judgment, we are reducing by 30 the number of hours each lawyer expended in this category, for a total specific hour reduction of 120 hours.

26. Fifth, Plaintiffs are not seeking compensation for some litigation-

related tasks performed by Messrs. Bernard, Longstreth, Bloom, and myself (category 8 in the right-hand column of Exhibit 4). This includes, for example, discussions with EPA during early 2009 concerning that agency's view of Duke's minor source claim. We think that sort of consultation, as well as other work in this category, is on the margin in terms of fee recovery, and we are eliminating it. The total number of hours in this category is 127.45.

27. Plaintiffs' specific reductions total more than 1,000 hours of recorded time. These reductions are summarized in Exhibit 7.

Hourly Rates

28. In assigning hourly rates, Plaintiffs propose using Charlotte as the appropriate market. It is within the Western District of North Carolina, where Plaintiffs filed their complaint. I do not believe Asheville is the appropriate market. I am familiar with the lawyers who do environmental work in North Carolina, and I do not know of any Asheville lawyer with the experience, expertise, time, financial capacity, and willingness to undertake a case like this for Plaintiffs. Duke's principal attorneys are in Charlotte. I think it is the fair market to use.

29. Since SELC and NRDC do not charge fees to clients, we

researched applicable rates in Charlotte for lawyers at the level of experience of the SELC and NRDC staff who litigated the case for Plaintiffs. Those rates are set forth in the declaration of Richard C. Gaskins, Jr. (Exhibit 8 to Plaintiffs' brief), who practiced law in Charlotte from 1984 to 2008. Mr. Gaskins was the Chair of the Environmental and Natural Resources Section of the North Carolina Bar Association; he is familiar with environmental practice in North Carolina generally, and in Charlotte in particular.

30. According to Mr. Gaskins, Charlotte market rates for Mr. Bernard and me range from $400-500 per hour; rates for Mr. Longstreth and Mr. Bloom range from $250-300 per hour. For the purpose of this fee application, Plaintiffs chose the middle of the range for all lawyers: $450 per hour for Mr. Bernard and me, and $275 per hour for Messrs. Longstreth and Bloom. I believe these rates are reasonable.

Overall Percentage Reduction

31. We then multiplied the number of recorded hours (minus specific hour reductions) by the hourly rate for each attorney. The result is the lodestar fee. We then applied travel reductions to derive the revised lodestar fee.

32. In a further exercise of billing judgment, we are reducing the

revised lodestar fee by 20%, for three principal reasons. First, a number of lawyers worked on the case for Plaintiffs. While each of them contributed to the effectiveness of the representation, a certain amount of duplication or redundancy is inevitable when more than one or two lawyers are involved. I believe the 20% reduction, on top of the specific hour reductions Plaintiffs have already taken, more than covers any such inefficiency. Second, we are mindful of the judicial policy against undue litigation over attorneys' fees. By taking a substantial percentage reduction in addition to specific hourly cuts, we hope to discourage time-consuming contention that would burden unduly the Court or the parties. Third, as I mentioned earlier, Plaintiffs take seriously the word "reasonable" as it applies to fees. While recovering fees when they are available is essential to both SELC and NRDC, neither organization seeks any financial windfall from its work.

Final Fee Calculation

33. The final calculation of attorneys' fees Plaintiffs seek to recover is set forth in Exhibit 9 to the brief. The total fee award Plaintiffs seek is $883,165. Based on my experience, my intimate knowledge of the case and the work it involved on the part of counsel, the excellent and important result Plaintiffs achieved, and the other relevant factors discussed in our

14

accompanying brief, I believe this represents a reasonable fee.

Expenses Incurred

34. In the course of litigating the case, Plaintiffs incurred out-of-pocket costs for which they now seek reimbursement. The lion's share of these costs is payments to Dr. Sahu for his invaluable technical help. Other costs are for the filing fee; transcripts of Court hearings; travel for Messrs. Bernard, Longstreth, Bloom and myself to Asheville for Court appearances (airfare, rental car, hotel for October 2008 hearing); and one trip by me to Washington, D.C. to work with NRDC co-counsel. We have exercised billing judgment here too. We do not seek reimbursement for any other out-of-pocket expense SELC or NRDC actually incurred.

35. A chart displaying the costs for which Plaintiffs seek reimbursement is appended as Exhibit 10. The total amount of costs Plaintiffs seek to recover is $31,924.

36. Dr. Sahu's invoices and Plaintiffs' supporting documentation for other costs are appended as Exhibit 11.

## Conclusion

37. As a nonprofit environmental attorney, I understand first-hand the wisdom of the fee-shifting provisions Congress included in the Clean Air Act and similar environmental statutes. Without fee-shifting, cases like this one would rarely be brought. This particular case would not have been brought had SELC and NRDC not agreed to do so. Fighting Duke Energy about whether a section of the Clean Air Act applies to Cliffside Unit 6, without contemporaneous payment and without guarantee of any payment unless Plaintiffs prevailed, would not have been an alluring prospect for a private, for-profit attorney.

38. Congress understood this. It meant to encourage effective lawyers to undertake citizen-based enforcement cases as a means of assuring compliance with the Clean Air Act's procedural and substantive mandates. Precisely that purpose has been vindicated here. Litigating nonprofit firms like SELC and NRDC depend on fee awards in order to carry out their work.

39. I understand and respect the Court's discretion to award fees and costs it considers to be reasonable and warranted. Plaintiffs seek to recover fees and expenses of $915,089. For the reasons explained above and in our

brief, I believe this would constitute a reasonable award and would vindicate the good purposes of the fee-shifting Congress provided in the Clean Air Act.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

July 30, 2009

_____
John T. Suttles, Jr., Esq.

17

Case 1:08-cv-00318-LHT   Document 93-3   Filed 07/31/09   Page 18 of 18