# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

### CIVIL NO.  1:08CV318

| | | |
|---|---|---|
| SOUTHERN ALLIANCE FOR CLEAN ENERGY; ENVIRONMENTAL DEFENSE FUND; NATIONAL PARKS CONSERVATION ASSOCIATION; NATURAL RESOURCES DEFENSE COUNCIL; and SIERRA CLUB, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| Vs. | ) ) | **MEMORANDUM AND O R D E R** |
| DUKE ENERGY CAROLINAS, LLC, | ) ) | |
| Defendant. | ) ) | |

**THIS MATTER** is before the Court on Plaintiffs' motion for attorney fees and costs, filed July 31, 2009.  For the reasons that follow, Plaintiffs' motion is granted in part, and denied in part.

## I.  PROCEDURAL AND FACTUAL  HISTORY

On July 16, 2008, the Plaintiffs filed a complaint against the Defendant Duke Energy Carolinas, LLC ("Duke" or "Defendant"), alleging violations of the Clean Air Act ("the Act" or "CAA") by the construction of

Duke's new 800 megawatt coal fired power plant (Cliffside Unit 6) without first satisfying the Maximum Achievable Control Technology ("MACT") requirements of the Act. **See Clean Air Act § 112(g)(2)(B), 42 U.S.C. § 7412(g)(2)(B);** *see also***, 15A N.C. Admin. Code 02Q.0528(b).** Plaintiffs sought (1) a declaratory judgment that Defendant's construction of Cliffside Unit 6, without an approved MACT determination by an appropriate agency, is illegal under § 112 of the CAA; (2) a permanent injunction halting construction or operation of Cliffside Unit 6 until Defendant complied with the CAA; (3) civil penalties against Defendant up to the maximum of $32,500 per day for each violation of the CAA; and (4) attorney fees and costs associated with bringing and prosecuting this action. **Complaint, at 16.**

On August 8, 2008, Plaintiffs filed a motion for summary judgment on the issue of Defendant's liability under the CAA and the issue of Plaintiffs' standing to bring the lawsuit. On August 11, 2008, Defendant filed a motion to dismiss the complaint contending the Court lacked subject matter jurisdiction and Plaintiffs lacked standing to bring the suit. Thereafter, the Court denied Defendant's motion to dismiss and allowed Plaintiffs' motion for summary judgment on the issue of liability and standing. ***See***

**Memorandum and Order, filed December 2, 2008; Judgment, filed December 2, 2008.** On December 17, 2008, Defendant filed an appeal of the Court's Judgment, but thereafter reached an agreement with Plaintiffs on a stay of the appeal pending further proceedings herein; the stay of the appeal was allowed by the Fourth Circuit.[1] *See* **Fourth Circuit Order, filed February 10, 2009.**

In the Judgment, the Court retained subject matter jurisdiction over this action; found Cliffside Unit 6 qualified as a potential "major source" of Hazardous Air Pollutants ("HAP") under the § 112 of the CAA; and found that the Division of Air Quality of the North Carolina Department of Environmental and Natural Resources (hereinafter "DAQ") had the authority and duty to enforce the requirement of a full MACT proceeding and to modify its previously issued construction permit for Cliffside Unit 6 if the MACT proceeding indicated that a new permit was necessary to comply with the current law. **Judgment, ¶¶ 1, 3, 4.** In addition, Defendant was ordered to initiate and participate in a case-by-case type MACT proceeding with appropriate public participation before the DAQ which is

---

[1]The Fourth Circuit's stay of the appeal of the December 2, 2008, Memorandum and Order and Judgment is still in effect.

consistent with the DAQ and § 112 standards. *Id.* ¶ **5.** The Court ordered that the MACT proceeding be completed within 60 days from entry of the Judgment. *Id.* The Court specifically abstained from further involvement in the state permitting process, but retained jurisdiction to review the ongoing MACT proceedings in order to assure compliance with current federal law and to intervene if necessary to accomplish this end. *Id.* ¶ **7.** Defendant began compliance with the Judgment within two days of its entry and DAQ began full cooperation by initiating the MACT permitting process.

As the MACT proceedings progressed, the undersigned entered an order inviting the Office of the North Carolina Attorney General to file an *amicus* brief addressing Defendant's progress in complying with the Judgment. **See Order, filed January 9, 2009.** That same day, the DAQ filed a report detailing the numerous activities undertaken by that department and the Defendant in order to comply with the Judgment. ***See*** **Notice by DAQ, filed January 9, 2009.** On January 20, 2009, North Carolina's Attorney General filed his *amicus* brief and noted that Defendant was in full compliance with the Court's Judgment. ***Amicus Curiae* Brief of the North Carolina Division of Air Quality, filed January 20, 2009.** On

March 16, 2009, the DAQ through the Attorney General filed another *amicus* report informing the Court that the proceedings contemplated by the Judgment had been completed and the DAQ had determined Cliffside Unit 6 was a "minor source" of HAP's, rather than the "major source" Plaintiffs alleged in their complaint. **Report of *Amicus Curiae* of the North Carolina Division of Air Quality, filed March 16, 2009, at 4.** The report advised that DAQ issued Defendant a revised permit, entitled Permit T29. ***See* Exhibit A, attached to *id*. (Permit T29 replaced Permit T28).** The report further noted that the DAQ's decision was appealable to the North Carolina Office of Administrative Hearings (hereinafter "OAH") within a period of 30 days as set forth in N.C. Gen. Stat. § 143-215.108(e) and § 150B-23(f). **Report, at 6-7**. The DAQ informed the Court that there were currently four cases pending before the OAH regarding Defendant's original Permit T28 for Cliffside Unit 6. ***Id.* at 7, n.2.** Within the 30-day period for appeal, all of the Plaintiffs in the present action, save Plaintiff Natural Resources Defense Council, filed an appeal entitled "Petition for a Contested Case Hearing with the OAH" on May 12, 2009. ***See* Exhibit A, *attached to* Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment, filed May 28, 2009.**

On May 1, 2009, Defendant filed a motion for summary judgment contending that the Court should (1) dismiss the case because the DAQ had determined that Cliffside Unit 6 was not a "major source" of HAP's that was subject to § 112(g) MACT limits, as Plaintiffs had alleged in their complaint; and (2) dismiss the case as moot because following the DAQ'S "minor source" determination there was no longer a "case or controversy" under Article III of the Constitution. **Duke's Brief in Support of Motion for Summary Judgment, filed May 1, 2009, at 1, 12**. On May 18, 2009, along with their opposition to Duke's motion for summary judgment, Plaintiffs also filed a motion to enforce the December 2, 2008, Judgment. Plaintiffs argued the Court's December 2 Judgment ordered Defendant "to complete a MACT proceeding and obtain MACT limitations on Unit 6's emission of HAP's as required by the CAA. Rather than obtaining MACT limits, [Plaintiff contends] Duke procured a revised permit designating Unit 6 a 'minor source' of HAP's exempt from MACT requirements." **Plaintiffs' Motion to Enforce the Judgment, filed May 18, 2009, at 2.** On July 2, 2009, the undersigned entered an Order, the findings of which are fully incorporated herein, denying both the Defendant's motion for summary judgment and Plaintiffs' motion to enforce the Judgment. ***See* Order of**

**Dismissal, filed July 2, 2009.** For the reasons set forth therein, this Court abstained from further involvement in the case, and dismissed the action without prejudice. *Id*. **at 16.** The Court found that the T29 permit issued to Defendant for the Cliffside power plant was properly challenged through North Carolina's specialized administrative process. The undersigned noted that in the event the Plaintiffs herein or any other aggrieved party wanted to challenge the final permit resulting from this administrative process, such parties would be free to file a challenge in federal court. *Id.* **at 15.** [2]

After an extension of time in which to do so, Plaintiffs filed their motion for attorneys' fees and costs and supporting memorandum on July 31, 2009. **Plaintiffs' Motion for Attorney Fees and Expenses and supporting Memorandum, filed July 31, 2009.** On August 7, 2009, Defendant filed a response in opposition, and Plaintiffs filed a reply thereto August 12, 2009. **Defendant's Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs ("Defendant's Response"), filed August 7, 2009; Plaintiffs' Reply to Defendant's Response ("Plaintiffs' Reply"),**

---

[2] Both parties have appealed the Court's Order. *See* **Plaintiffs' Notice of Appeal, filed August 3, 2009; Defendant's Notice of Appeal, filed August 17, 2009.**

**filed August 12, 2009.** The Court finds that the positions of the respective parties having been fully briefed herein, a hearing is unnecessary for resolution of Plaintiffs' motion for attorney fees and costs.

## II. PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS

Plaintiffs have filed a motion for attorney fees and costs contending they are entitled to fees for all aspects of this case. Defendant urges the Court to deny Plaintiffs' motion in its entirety; in the alternative, Defendant requests the Court award a substantially reduced figure than that proposed by Plaintiffs. **Defendant's Response, at 26.**

This complaint was filed as a citizen suit under 42 U.S.C. § 7604(a), which provides that any person may commence a civil suit against any other person or entity if there is evidence to show that the person or entity is in violation of the provisions of the CAA. The CAA further allows for the Court, after issuing any final order brought under § 7604(a), to "award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such an award is appropriate." **42 U.S.C. § 7604(d).** Defendant contends Plaintiffs are not entitled to any attorney fees or costs because "[s]ince Plaintiffs filed this citizen suit in July

2008, they have failed to achieve any success other than a procedural order from this Court requiring Duke Energy to initiate and participate in a formal MACT proceeding before DAQ – a proceeding that rejected the entire basis for their claims and substantive relief in this action."

**Defendant's Response, at 11.** Plaintiffs contend that Defendant "mischaracterizes the history of this case, as well as its object and results."

**Plaintiffs' Reply, at 2.**

Plaintiffs filed this citizen suit objecting to the ongoing construction of the Cliffside Unit 6 plant and contending Permit T28 was not issued in compliance with the provisions of the CAA. As previously stated, Plaintiffs sought declaratory and injunctive relief, civil penalties for violations of the CAA by Defendant, and attorney fees and costs. In ruling on the parties' motions to dismiss and for summary judgment, the Court found subject matter jurisdiction was proper and that Plaintiffs had standing, despite Defendant's assertion to the contrary, to pursue the action challenging Defendant's "failure and refusal to participate in a formal MACT proceeding." **Judgment, *supra*, at 2.** Plaintiffs prevailed on these two issues and the case remained in Court.

The undersigned further found that Cliffside Unit 6 qualified as a *potential* "major source" of HAP's that was subject to regulation under § 112 and that Defendant's continued construction and future operation of Cliffside Unit 6 was in violation of the provisions of the CAA. ***Id.* (emphasis added).** Based on this finding, the Court ordered Defendant to participate without delay in a full MACT proceeding before the DAQ. The Court finds that Plaintiffs prevailed when the Court granted their claim for relief by requiring Defendant to participate in and complete a full MACT proceeding before the DAQ.

Plaintiffs' request for injunctive relief was not granted; however, the Court made plain that absent full compliance with the Judgment, Defendant risked an injunction that w ould have brought the construction of Cliffside Unit 6 to an immediate halt. ***See* Memorandum and Order, *supra*, at 24**. Based on the DAQ's representations to the Court and the undersigned's review of the progress made by Defendant, no injunction ever issued. The record in this matter shows that throughout the 60-day time period for completion of the MACT proceeding and beyond, Defendant and the DAQ provided regular updates on the status of the proceedings and Duke's participation therein.

Plaintiffs claim that they are entitled to attorney fees and costs for the duration of this case is simply not supported by the record. Although the Court finds Plaintiffs prevailed through entry of the December 2 Judgment, the Court is not persuaded Plaintiffs did so beyond that date. Plaintiffs reason that their complaint "included a single claim" on which Plaintiffs succeeded in "obtaining a Judgment requiring Duke's compliance with the CAA § 112 through a public MACT process to be completed within 60 days." **Plaintiffs' Reply, at 5.** Plaintiffs argue their expected participation in that MACT process, among other efforts, entitles them to claim time and expenses for such effort. *Id.* Plaintiffs correctly note that this Court retained jurisdiction to ensure that Defendant was fully participating in the ongoing MACT process and complying with federal law, and preserved the right to intervene if the Court found that Defendant was not participating in a satisfactory manner. *Id.* However, the Court's retention of jurisdiction does not entitle Plaintiffs to an order for their voluntary participation in a public process, one in which they and hundreds of other members of the public participated. As Plaintiffs note, the Court found that ongoing supervision by the Court was necessary to ensure compliance with the December 2 Judgment. As discussed herein, and in the Order of

Dismissal, the DAQ provided the Court with regular updates on the status of the MACT process and detailed Defendant's cooperation therein. The Court remained well aware of the extent of Defendant's compliance with the Judgment. As a result of the MACT proceeding, DAQ determined Cliffside Unit 6 to be a minor source – an outcome Plaintiffs opposed by filing a motion to enforce the judgment on May 18, 2009; that filing included a motion opposing Defendant's motion for summary judgment. The Court denied this motion along with Defendant's motion for summary judgment. *See* **Order of Dismissal, filed July 2, 2009.** The Court found, *via* the *amicus* filings of the DAQ, that Defendant had completed the permitting process as required by the Judgment. At this point, Plaintiffs' case changed from challenging Defendant's compliance with the CAA into an action against DAQ and its determination regarding the Cliffside plant. Plaintiffs flatly disagreed with the DAQ's determination that Cliffside Unit 6 was a "minor source" and then pursued two avenues of attack, a strategy that has been employed since the day Plaintiffs filed their complaint in this matter. The undersigned found that because Plaintiffs were challenging the DAQ's determination in different forums, "two separate and independent courts are now being asked to decide the same issue. This is

obviously an unwise use of scarce judicial resources.  Left undisturbed,

after final disposition at the trial level, two separate paths of appeal could

be followed. Such a scenario is unacceptable." **Order of Dismissal, at 7.**

For the foregoing reasons, the Court concludes that Plaintiffs are not

entitled to recover attorney fees and costs after the date of entry of the

December 2, 2008, Judgment, except for a reasonable amount of time

expended preparing their motion for attorney fees and costs.

## III.  CALCULATING THE AWARD

The remaining question is to what amount of attorney fees and costs

are Plaintiffs entitled for their work and expenses occurring before entry of

the December 2 Judgment and on preparing the instant motion.  Plaintiffs

submitted time sheets and other documentation for four attorneys showing

the time expended on this case from April 2008 to late July 2009, and the

resulting expenses incurred.  *See* **Exhibit A,** *attached to* **Plaintiffs'**

**Memorandum in Support of Attorney Fees and Costs**.  Following

Defendant's detailed examination of Plaintiffs' initial motion, Plaintiffs

submitted a revised fee calculation that reflected a significant reduction in

hours claimed.  *See* **Exhibits 2 and 3,** *attached to* **Plaintiffs' Reply**.  The

revised fee calculation again seeks reimbursement for time spent before and after the December 2 Judgment. Plaintiffs have divided their motion into the following categories of work performed: (1) before entry of the December 2 Judgment; (2) Court ordered § 112 process; (3) discovery; (4) opposing Duke's motion for summary judgment and seeking the motion to enforce the judgment; (5) settlement discussions; (6) appeal; and (7) work on the fee petition. **See Exhibit 3,** *attached to* **Plaintiffs' Reply, at 2.** As previously stated, the Court finds Plaintiffs are not entitled to an award of fees and costs expended following December 2, except for reasonable time spent preparing the fee petitions herein. Therefore, the Court's focus will be directed on the work and expenses expended prior to December 2 and on the preparation of the fee petition, *i.e.*, category entitled "1. Pre-12/2/08," and "7. Fee Petition" and the expenses discussed below.[3] The

_____

[3] The Court does not award fees or costs associated with policing the § 112 process, responding to Duke's May 2009, motion for summary judgment, or work expended on the motion to enforce the judgment for the reasons previously stated. The Court does not award fees or costs associated with the appeal of the December 2 Judgment. The parties agreed to a stay of the appeal of that Judgment, and the Court is hard-pressed to label that a victory for Plaintiffs. Moreover, no convincing argument to the contrary is advanced by Plaintiffs. To the extent that Plaintiffs expended time on the appeal, many, if not all, of the arguments made on the appeal could be drawn directly from the material previously submitted to this Court. The Court does not award fees and costs for

Court considers these time sheets and supporting affidavits for the time
expended prior to entry of the December 2 Judgment.

John Suttles claims 547.5 hours of work prior to December 2, and
50.75 hours of work on the fee petition (at a rate of $450 per hour), for a
total of $ <u>246,375</u> prior to Judgment and $ <u>22,837.50</u> thereafter; Mitchell
Bernard claims 178.35 hours of work prior to December 2, 41 hours of
work on the fee petition (at a rate of $450 per hour), representing $
<u>80,257.50</u> prior to Judgment and $ <u>18,450</u> after; Benjamin Longstreth
claims 383.45 hours of work prior to December 2, 5.1 hours of work on the
fee petition (at a rate of $275 an hour), for a total of $ <u>105,448.75</u> prior to
Judgment and $ <u>1,402.50</u>  after; and Aaron Bloom claims 388.2 hours of
work prior to December 2, 66.4 hours of work on the fee petition (at a rate
of $275 an hour), for a total of $ <u>106,755</u> prior to Judgment and $ <u>18,260</u>

---

exploring potential settlement of this matter.  Plaintiff provides no
convincing support for such an award and Plaintiffs' bare assertion that
such settlement efforts were carried out in "good faith" is unavailing.
Finally, the Court does not award attorney fees or costs related to
discovery in this matter because none was started until after entry of the
December 2 Judgment.  **See Plaintiffs' Reply, at 16 ("Discovery
commenced on January 21, 2009 . . . and was stayed on March 31,
2009[.]").**

after. *Id.* Therefore, the total amount claimed by these four attorneys for work done prior to the Judgment and on their fee petition is $ 599,786.25.

The process for calculating an award of attorney fees begins with a determination of the lodestar figure, which is the number of reasonable hours expended multiplied by a reasonable hourly rate. ***Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008).** What is a reasonable number of hours and hourly rate should be determined by considering the twelve factors set out below:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

***Id.* at 243-44 (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by, Blanchard v. Bergeron*, 489 U.S. 87 (1989)).**

Defendant does not dispute the hourly rate submitted by each of the Plaintiffs' attorneys. The Court finds that based on the education, training and experience of the Plaintiffs' attorneys, the complexity of the matters involved in prosecuting a case under the CAA (including the novel nature of this case as has been discussed in prior orders), and the prevailing rate for environmental work in the particular attorney's location of practice, whether in New York, Chapel Hill, or Charlotte, that the submitted hourly rates are reasonable. The Court finds that this case presented a novel legal issue that was complex in nature. The Court also has examined the cases cited by both parties in considering what amount of attorney fees and costs are reasonable.

Next, the Court considers whether the number of hours expended prior to entry of the December 2 Judgment as claimed by Plaintiffs' counsel were reasonable in number. For the most part, the time spent before December 2 is divided into the areas of research, drafting and filing the complaint; work on Plaintiffs' motion for summary judgment and responding/replying to Defendant's motion to dismiss or other Duke motions; and time preparing for oral argument that occurred October 16, 2008.

Suttles claims revised hours of 547.5 hours expended before entry of the December 2 Judgment, of which roughly 145 hours were spent on preparation for the oral argument on October 16, 2008.  Bernard claims revised hours of 178.35 prior to December 2; of that time, approximately 22.75 hour are claimed for oral argument preparations.  Longstreth claims 383.45 hours prior to December 2, with 75 hours attributed to oral argument preparation.  Bloom claims 388.2 hours prior to December 2, which includes 57 hours for oral argument preparation.

The Court has examined the time claimed by these attorneys in preparing for oral argument and finds that their "revised" numbers of hours must be further reduced.  Time spent preparing for oral argument would mirror the work claimed for preparing Plaintiffs' motion for summary judgment and responding to Defendant's motion to dismiss.  In fact, at the hearing on October 16, 2008, Plaintiffs' arguments very closely tracked those contained in their briefs filed in support of summary judgment and in opposition to Defendant's motion to dismiss.  Plaintiffs "believe the hours they expended were reasonable and that any excess or duplication is accounted for in the reductions they have already proposed, [however] they recognize that there may be some merit to Duke's objection and are

willing to offer to reduce their recorded hours" spent on oral argument by 100 hours to be divided evenly among the four lawyers. **Plaintiffs' Reply, at 15-16.** However, it is difficult to discern how this reduction has been applied to reduce hours spent prior to December 2. Because the Court finds much of the time spent in preparation for oral argument replicated work already expended on the pending motions, the hours claimed by each of the attorneys for such preparation will be reduced by 75 percent. The undersigned has examined the remaining hours spent prior to December 2 and finds that the number of hours are reasonable. Therefore, calculating the reductions noted above, for work performed before December 2, Suttles is awarded 438.75 hours (including 36.25 hours for oral argument preparation); Bernard is awarded 161.29 hours (including 5.68 hours for oral argument preparation); Longstreth is awarded 327.20 hours (including 18.75 hours for oral argument preparation); and Bloom is awarded 345.50 hours (including 14.25 hours for oral argument preparation).

Next, Plaintiffs request fees of over $60,000 for time spent preparing this fee petition. *See* **Exhibit 3,** *supra.* Defendant does not seriously dispute that a prevailing party is entitled to reasonable fees for preparation of a fee petition, but it vigorously disputes the amount claimed by Plaintiffs'

counsel. Plaintiffs' argument in support of the amount claimed is unavailing. Each attorney has the professional responsibility to accurately record the amount of time worked and on what particular aspect of his or her client's case the work is spent. The undersigned finds these amounts, with the exception of that claimed by Longstreth, are unreasonable and will be reduced by 75 percent. Therefore, calculating this reduction, Suttles' claim will be reduced to $5,709.38; Bernard will be awarded $4,612.50; and Bloom will be awarded $4,565.00.

Plaintiffs' request an award of $31,924 in expenses incurred both before and after entry of the December 2 Judgment. Defendant disputes this figure and contends that no more $16,524 should be awarded for expenses. **Defendant's Response, at 23.** For the reasons previously stated, the undersigned will allow only those costs incurred before entry of the December 2 Judgment. *See* **Exhibit 2, Declaration of John T. Suttles, Jr.,** *attached to* **Plaintiffs' Motion for Attorneys' Fees and Expenses, at 11;** *see also* **Exhibits 10 and 11,** *attached to id.* Plaintiffs claim expenses of $27,500 associated with employing Dr. Ranajit Sahu. Of this amount, $7,550 was expended prior to entry of the December 2 Judgment. *See* **Exhibit 10, at 2.** Dr. Sahu holds a Ph.D. in mechanical

engineering from the California Institute of Technology, and has over 17 years experience in the field of environmental, mechanical, and chemical engineering. Defendant does not challenge Dr. Sahu's expertise in the field or his qualifications to render expert opinions in this case. ***See Exhibits 2 ("Declaration of Ranajit Sahu, Aug. 8, 2008") and 3 (Ranajit Sahu Resume),*** *attached to* **Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment on Liability and Standing, filed August 8, 2008.**

The Court finds that, after a thorough review of Dr. Sahu's declaration, resume, and invoices submitted, he is qualified as an expert in the field of environmental engineering and was qualified to render an opinion on Defendant's ongoing construction of Cliffside Unit 6. The hours Dr. Sahu expended in this case were reasonably related to Plaintiffs' successful efforts prior to the December 2 Judgment and the Court will award Plaintiffs the expenses incurred in employing Dr. Sahu prior to the December 2 Judgment in the amount of $7,550.

Plaintiffs submit invoices showing $4,224 in expenses incurred for the cost of the filing fee, transcripts, travel, and accommodations. ***See Exhibits 10 and 11,*** *supra.* The Court has examined the claimed

expenses incurred before entry of the December 2 Judgment and finds them to be reasonable and should be awarded to Plaintiffs to the extent they prevailed, as noted herein, in the December 2 Judgment.

## IV.  CONCLUSION

For the reasons stated herein, the Court finds attorney fees in the following amounts are reasonable and shall be awarded to Plaintiffs: Suttles is awarded an attorney fee of $203,146.88; Bernard is awarded a total of $77,193 in attorney fees; Longstreth is awarded $91,382.50 in attorney fees; and Bloom is awarded $99,577.50 in attorney fees. Plaintiffs are awarded $7,550 in expert fees for Dr. Sahu prior to the December 2 Judgment, and $4,224 in expenses incurred for the costs of the filing fee, transcripts, travel, and accommodations.

## V.  ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiffs' motion for attorney fees and expenses is **GRANTED IN PART, AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiffs are hereby awarded the sum of **FOUR HUNDRED SEVENTY-ONE THOUSAND, TWO HUNDRED**

**NINETY-NINE DOLLARS AND EIGHTY-EIGHT CENTS ($471,299.88)** in

attorney fees, and expert fees and expenses in the amount of **ELEVEN**

**THOUSAND, SEVEN HUNDRED SEVENTY-FOUR DOLLARS**

**($11,774.00)** in expert fees and expenses.

Signed: August 26, 2009

Lacy H. Thornburg
United States District Judge