**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SOUTHERN ALLIANCE FOR CLEAN
ENERGY; ENVIRONMENTAL DEFENSE
FUND; NATIONAL PARKS
CONSERVATION ASSOCIATION;
NATURAL RESOURCES DEFENSE
COUNCIL; SIERRA CLUB,
   *Plaintiffs-Appellees,*
     v.
DUKE ENERGY CAROLINAS, LLC,
   *Defendant-Appellant.*
⎬ No. 08-2370

SOUTHERN ALLIANCE FOR CLEAN
ENERGY; ENVIRONMENTAL DEFENSE
FUND; NATIONAL PARKS
CONSERVATION ASSOCIATION;
NATURAL RESOURCES DEFENSE
COUNCIL; SIERRA CLUB,
   *Plaintiffs-Appellees,*
     v.
DUKE ENERGY CAROLINAS, LLC,
   *Defendant-Appellant.*
⎬ No. 09-1928

SOUTHERN ALLIANCE FOR CLEAN
ENERGY; ENVIRONMENTAL DEFENSE
FUND; NATIONAL PARKS
CONSERVATION ASSOCIATION;
NATURAL RESOURCES DEFENSE
COUNCIL; SIERRA CLUB,

    *Plaintiffs-Appellees,*

    v.

DUKE ENERGY CAROLINAS, LLC,

    *Defendant-Appellant.*

No. 09-2113

Appeals from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(1:08-cv-00318-LHT)

Argued: December 7, 2010

Decided: April 14, 2011

Before GREGORY, DAVIS, and WYNN, Circuit Judges.

Nos. 08-2370 and 09-1928 dismissed; No. 09-2113 affirmed by published opinion. Judge Wynn wrote the opinion, in which Judge Gregory and Judge Davis concurred.

**COUNSEL**

**ARGUED:** Gene C. Schaerr, WINSTON & STRAWN, LLP, Washington, D.C., for Appellant. James Blanding Holman,

SOUTHERN ENVIRONMENTAL LAW CENTER, Charleston, South Carolina, for Appellees. **ON BRIEF:** Dean M. Moesser, DUKE ENERGY CORPORATION, Houston, Texas; T. Thomas Cottingham, III, Nash E. Long, III, Phoebe Norton Coddington, WINSTON & STRAWN, LLP, Charlotte, North Carolina, for Appellant. John T. Suttles, Jr., SOUTHERN ENVIRONMENTAL LAW CENTER, Chapel Hill, North Carolina, for Appellees; Benjamin Longstreth, NATURAL RESOURCES DEFENSE COUNCIL, Washington, D.C., Mitchell S. Bernard, NATURAL RESOURCES DEFENSE COUNCIL, New York, New York, Jonathan Wiener, NATURAL RESOURCES DEFENSE COUNCIL, San Francisco, California, for Appellee Natural Resources Defense Council.

## OPINION

WYNN, Circuit Judge:

In this Clean Air Act case, Duke Energy Carolinas, LLC ("Duke Energy") challenges an attorneys' fees award by attacking the nature of the victory supporting the award, as well as the merits order on which the fee award was based—summary judgment in favor of Plaintiffs Southern Alliance for Clean Energy, Environmental Defense Fund, National Parks Conversation Association, Natural Resources Defense Council, and the Sierra Club ("Plaintiffs"). With its summary judgment victory, Plaintiffs forced Duke Energy to submit to administrative evaluations by the North Carolina state regulators who administer the Clean Air Act. Those administrative proceedings constituted some success and thus supported an award of attorneys' fees under the Clean Air Act. And nothing this Court might hold with regard to the merits of the summary judgment determination could undo those proceedings or nullify Plaintiffs' success. We therefore affirm the district court's fee award.

I.

Duke Energy is a regulated public utility that produces electricity. It operates the Cliffside Steam Station, located on the border of Cleveland and Rutherford Counties in North Carolina.

In 2005, Duke Energy applied to the North Carolina Utilities Commission for a certificate to build a new 800-megawatt coal-fired power plant at Cliffside. The application was granted, but before it could begin constructing the new plant, called Unit 6, Duke Energy had to obtain a construction permit from the State of North Carolina under the Clean Air Act.

The Clean Air Act governs air quality and emissions standards throughout the United States. Congress created that act "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare . . . ." 42 U.S.C. § 7401(b)(1). Section 112(g) of the Clean Air Act includes procedural and substantive requirements for ensuring that new major and potential major sources of hazardous air pollution are designed to maximally reduce their emissions. Those Maximum Achievable Control Technology ("MACT") provisions (and others) are administered by the states, under State Implementation Plans approved by the Environmental Protection Agency. *See* 42 U.S.C. §§ 7407(a), 7410.

In North Carolina, the Department of Environmental Resources' Division of Air Quality administers and enforces the State Implementation Plan. Among other things, the Division of Air Quality is responsible for issuing permits to air emissions sources. *See, e.g.*, 15A N.C. Admin. Code 2Q.0301; 15A N.C. Admin. Code 2Q.0308; 15A N.C. Admin. Code 2Q.0501; 15A N.C. Admin. Code 2Q.0502. It also oversees the construction and operation permitting process for new major sources of hazardous air pollution. *Id.*; *see also* N.C. Gen. Stat. § 143-215.108. Duke Energy applied to the

Division of Air Quality for a construction permit in December 2005 and revised its application in March 2007. On January 29, 2008, after completing various review procedures, the Division of Air Quality issued Duke Energy a permit authorizing construction of Unit 6, and Duke Energy "promptly" began construction. Brief of Appellant p. 20.

On July 16, 2008, Plaintiffs Southern Alliance for Clean Energy, Environmental Defense Fund, National Parks Conservation Association, Natural Resources Defense Council, and the Sierra Club filed a complaint against Duke Energy. Plaintiffs alleged that Duke Energy was violating the Clean Air Act by constructing Unit 6 without a determination that the facility would achieve a level of air pollution control that satisfied the act's MACT requirements. With their federal suit, Plaintiffs sought to have the district court: declare Duke Energy's construction of Unit 6 without a MACT determination illegal under the Clean Air Act; enjoin Duke Energy from further construction of Unit 6 until it complies with the Clean Air Act and any other applicable regulations; and assess civil penalties against Duke Energy for violating the Clean Air Act.

In August 2008, Plaintiffs moved for summary judgment on the basis that Duke Energy was violating the Clean Air Act by constructing a new major source of hazardous air pollution without first obtaining a determination from the State of North Carolina that the pollution source, Unit 6, was designed to control its hazardous emissions to the maximum extent possible. Duke Energy, in turn, moved to dismiss the complaint, arguing that Section 112(g) of the Clean Air Act, under which Plaintiffs brought their suit, did not apply and that Plaintiffs' complaint constituted an improper attack on the state permitting process.

On December 2, 2008, the district court denied Duke Energy's motion to dismiss but granted Plaintiffs' motion for summary judgment. The court held that the Clean Air Act applied and required determinations as to whether Unit 6 was a major

or minor source and, if a major source, whether MACT had been achieved. The court noted that "[w]hether Unit 6 is, or will be, at best a 'minor source' of pollution, as Defendant alleges, and not a 'major source' . . . has yet to be determined in the appropriate proceeding required by § 112(g)(2)(B), 42 U.S.C. § 7412(g)(2)(B)."[1] The district court therefore ordered Duke Energy to engage in proceedings under Section 112(g) of the Clean Air Act.

In July 2009, in response to Duke Energy's motion for summary judgment and Plaintiffs' motion to enforce the order granting summary judgment in their favor, the district court dismissed the case. The court emphasized that the facts were notably different from those at the case's inception. Specifically, by July 2009, Duke Energy had undergone the MACT evaluation with the state, and the parties were contesting the resulting permit before the North Carolina Office of Administrative Hearings. The issues raised and relief sought before the Office of Administrative Hearings were essentially the same as those before the district court. The court determined that North Carolina had a strong interest in the issues and that the state administrative proceeding was adequate to address them. The district court therefore decided to abstain from further involvement in the case.

Following the district court's dismissal of the case, Plaintiffs moved for $886,089 in attorneys' fees and costs. Plaintiffs argued that they were entitled to the fees because, among other things, they had succeeded on the merits in subjecting

---

[1] Under the Clean Air Act, a major source is one "that emits or has the potential to emit considering controls, in the aggregate, 10 tons per year or more of any hazardous air pollutant or 25 tons per year or more of any combination of hazardous air pollutants." 42 U.S.C. § 7412(a)(1). New sources that do not meet Section 112(a)(1)'s major source thresholds are considered minor sources. An initial determination, therefore, must be made as to whether a new source is major or minor for purposes of Section 112(g). That determination may require public notice and comment and a hearing. 15A N.C. Admin. Code 2Q.0306.

Unit 6 to the Clean Air Act and forcing Duke Energy to participate in a MACT determination. Duke Energy contended that Plaintiffs' summary judgment victory was merely procedural and trivial and that Plaintiffs, who also pursued a state court claim, should not be rewarded for their litigiousness.

The district court disagreed with Duke Energy and held, among other things, that Plaintiffs prevailed when the court held that Unit 6 was subject to the Clean Air Act and required Duke Energy to participate in a MACT proceeding. The court therefore awarded Plaintiffs their attorneys' fees through the December 2008 grant of summary judgment, as well as for their efforts to win their attorneys' fees and costs. The award totaled $483,073.88. Duke Energy appealed the district court's fee ruling, as well as its summary judgment and dismissal rulings.

II.

This case comes to us in an unusual posture. The district court initially granted summary judgment in favor of Plaintiffs. It later dismissed the suit on abstention grounds but thereafter granted Plaintiffs' motion for attorneys' fees. The only relief Duke Energy seeks in these consolidated appeals is the reversal of the attorneys' fees award. Indeed, Duke Energy stated in its opening brief that "[t]he ultimate issue in this case is whether the district court erred in awarding attorneys' fees to the plaintiffs" and called its appeal "a challenge to a decision by the district court awarding nearly $500,000 in fees to plaintiffs, based on a temporary procedural victory . . . ." Brief of Appellant p. 2, 4. One of Duke Energy's main arguments for overturning the award is that the district court, in its December 2008 memorandum and order, erred in not abstaining early on and granting Plaintiffs summary judgment, which served as the basis of the fee award.

Duke Energy asks us to revisit the district court's merits determinations solely for the purpose of setting aside the dis-

trict court's attorneys' fee award. Fee determinations are generally distinct from merits determinations. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202-03 (1988). Indeed, it has been recognized that a merits determination on which a fee award is based generally cannot be revisited on appeal from the fee award. *See Attia v. Soc'y of N.Y. Hosp.*, 12 F. App'x 78, 79-80 (2nd Cir. 2001) ("Plaintiff . . . appeals from an order . . . awarding defendants . . . attorneys' fees and costs . . . . [Plaintiff] seeks to revisit the merits of his copyright infringement action. Those arguments are foreclosed by the prior dismissal of his claims, which has been affirmed on appeal."); *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 902 (9th Cir. 1995) ("[N]othing in *Hensley* suggests that we should revisit the merits of each previously dismissed claim before characterizing it as 'unsuccessful.' It would neither be practical, nor consistent with *Hensley*, to do so; every fee application would otherwise become another battle over the merits . . . ."); *Naekel v. Dep't of Transp.*, 884 F.2d 1378, 1379 (Fed. Cir. 1989) ("Although the government reargues the merits, a request for attorney's fees should not result in a second major litigation." (internal quotation marks omitted)). Thus, Duke Energy's fee award appeal cannot serve as a vehicle for reviewing the merits of earlier orders.

As Duke Energy points out, it appealed not only from the fee award, but also from the December 2008 memorandum and order granting summary judgment for Plaintiffs. On Plaintiffs' motion, to which Duke Energy did not object, we held that appeal in abeyance and reinstated it when Duke Energy appealed the fee award. Nevertheless, the only relief Duke Energy seeks on appeal is the reversal of the fee award. "We review de novo the question of whether a party is eligible for an award of attorneys' fees under a fee-shifting statute." *W. Va. Highlands Conservancy, Inc. v. Kempthorne*, 569 F.3d 147, 152 (4th Cir. 2009).

Under the Clean Air Act's citizen suits provision, a court may award attorneys' fees "whenever the court determines

SOUTHERN ALLIANCE v. DUKE ENERGY CAROLINAS    9

such award is appropriate." 42 U.S.C. § 7604(d). "The discretion afforded courts and agencies under the 'whenever appropriate' statutes is not unbounded, however." *W. Va. Highlands Conservancy, Inc. v. Norton*, 343 F.3d 239, 244 (4th Cir. 2003) (affirming a fee award under the "whenever appropriate" provision of the Surface Mining Control and Reclamation Act). In *Ruckelshaus v. Sierra Club*, also a Clean Air Act case, the Supreme Court held that "absent some degree of success on the merits by the claimant, it is not 'appropriate' for a federal court to award attorney's fees . . . ." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983). Stated differently, the citizen suits attorneys' fees provision "was meant to expand the class of parties eligible for fee awards from prevailing parties to *partially prevailing* parties—parties achieving *some success*, even if not major success." *Id.* at 688.

Regarding what constitutes "some success," "'[w]henever appropriate' attorneys' fees statutes 'eliminate . . . the necessity for case-by-case scrutiny by federal courts into whether plaintiffs prevailed 'essentially' on 'central issues,' or 'essentially succeed[ed] in obtaining the relief [they] seek [ ] in [their] claims on the merits.'" *Kempthorne*, 569 F.3d at 154 (quoting *Ruckelshaus*, 463 U.S. at 688). It is therefore sufficient success to support attorneys' fees, for example, where an agency is ordered to carry out one of its regulatory duties such as adequately investigating complaints—regardless of the outcome of the investigation. *Id.* at 152-54 (citing *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313 (4th Cir. 1988) and *Norton*, 343 F.3d 239).

Indeed, in *Hanson*, 859 F.2d 313, this Court affirmed an attorneys' fee award where the plaintiffs brought a citizen suit under the Clean Water Act, alleging that the U.S. Army Corps of Engineers failed to adequately evaluate whether a tract of land contained wetlands. *Id.* at 315-17. The district court directed the Corps to make a properly informed wetlands determination and awarded the plaintiffs fees. *Id.* This Court affirmed based on the plaintiffs' success in obtaining a

remand ordering the Corps to undertake a proper investigation—regardless of the investigation's outcome. *Id.* at 317. And in *Ohio River Valley Envtl. Coal., Inc. v. Green Valley Coal Co.*, 511 F.3d 407 (4th Cir. 2007), this Court found attorneys' fees supported where a coal company took remedial action after environmental groups filed suit, even though the suit was ultimately voluntarily dismissed.

With this federal suit, Plaintiffs sought, among other things, a determination that Duke Energy, in constructing Unit 6, was subject to and in violation of Section 112(g) of the Clean Air Act, as well as enforcement of the Clean Air Act, penalties, and costs and fees. In its December 2008 memorandum and order, the district court determined that Duke Energy was subject to the Clean Air Act and was violating it by building Unit 6 without any determination as to whether Unit 6 constituted a minor or major source and, if major, without a MACT determination. The district court ordered Duke Energy to comply with the Clean Air Act, and specifically, to participate in a MACT assessment by North Carolina regulators.

The district court's order included substantive determinations and imposed a real burden on Duke Energy, which had up till then denied that it was subject to Section 112 by virtue of when it obtained its permit for Unit 6. It forced Duke Energy to participate in formal administrative evaluations pursuant to the Clean Air Act; those evaluations were one of Plaintiffs' goals with this suit. As a result of the administrative proceedings that the district court ordered, new limits were placed on Unit 6's hazardous emissions. If those limits are exceeded, Unit 6 will be subject to MACT requirements. Further, additional emissions monitoring, testing, and recordkeeping were required. The district court's December 2008 ruling was, therefore, neither a "merely procedural" victory nor "trivial," as Duke Energy contends.[2] Plaintiffs achieved some success supporting an award of attorneys' fees.

---

[2] Duke Energy challenges no other aspect of the fee award, such as the amount, which we therefore do not address.

Nothing this Court could do with regard to the merits of the district court's December 2008 memorandum and order could change the fact that Plaintiffs achieved some success in this litigation. Duke Energy was subject to state administrative proceedings as a consequence of Plaintiffs' suit. Regardless of their outcomes, those proceedings alone would support attorneys' fees. *See Hanson*, 859 F.2d at 317 (holding that a remand to an agency, regardless of outcome, supported a fee award). Those proceedings—a core objective of Plaintiffs' suit—have occurred and cannot be undone. Where "no action taken by this court can change the fact that [the plaintiff] has accomplished the objectives of [the] litigation" and "[n]o future proceedings involving the merits of the controversy will change this result," the underlying merits should not be reached. *Bagby v. Beal*, 606 F.2d 411, 415 (3d Cir. 1979) (internal quotation marks and citation omitted) (declining to reach the underlying merits where the plaintiff had obtained a hearing, a goal of her litigation which could not be undone, and therefore had achieved success supporting an attorneys' fee award). Because Duke Energy's merits arguments are irrelevant to our determination that Plaintiffs achieved some success supporting the fee award—the reversal of which is Duke Energy's sole goal on appeal—we need not reach them.[3] We hold that Plaintiffs' successes properly supported the award of attorneys' fees and costs and affirm the district court.

Nos. 08-2370 and 09-1928 *DISMISSED*
No. 09-2113 *AFFIRMED*

---

[3] Plaintiffs also contend that Duke Energy's merits arguments are moot. Because we find those arguments irrelevant to our analysis of the fee award, "the ultimate issue in this case," we do not address Plaintiffs' mootness argument.